IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| MILLIE WHITE, | ) | Civil Action No. 3:09-3295-SB-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District.  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for DIB on November 1, 2005, alleging disability since October 1, 2004 due to arthritis and degenerative disease in her back. Tr. 118. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held December 9, 2008, at which Plaintiff (represented by counsel) appeared and testified, the ALJ issued a decision dated February 26, 2009, finding that Plaintiff was not disabled because she was able to perform her past relevant work.

Plaintiff was sixty years old at the time of the ALJ's decision.  She has the equivalent of a high school education and has past relevant work as an apartment manager and customer service representative.

The ALJ found (Tr. 19-24):

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.    The claimant has not engaged in substantial gainful activity since October 1, 2004, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.    The claimant has the following severe impairments: degenerative disc disease, arthritis, degenerative joint disease and obesity (20 CFR 404.l521 *et seq.*).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c).

6.    The claimant is capable of performing past relevant work as a customer service representative and apartment manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2004 through the date of this decision (20 CFR 404.1520(f)).

On November 27, 2009, the Appeals Council denied Plaintiff's request for review of the

ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner.

Plaintiff filed this action in the United States District Court on December 22, 2009.

## **STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and

whether the Commissioner's findings of fact are supported by substantial evidence.  Richardson v.

Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972).  Under 42

U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## MEDICAL RECORD

On June 22, 2004, Plaintiff was examined for complaints of chronic intermittent low back pain by Dr. Dominic W. McKinley, an orthopedist in North Carolina. Plaintiff said that her pain was typically worse with sitting and she had to leave work that morning due to worsening low back discomfort. Examination revealed that Plaintiff had moderate lumbar tenderness and mild trochanteric bursa tenderness, but negative straight-leg raise testing, good hip range of motion, normal sensation and reflexes, full muscle strength, and a normal gait. Dr. McKinley diagnosed chronic low back pain with concern for right-sided sacroiliac ("SI") joint syndrome, lumbar degenerative disc disease, and right trochanteric bursitis. He recommended that Plaintiff do stretching exercises and walk at least twenty minutes a day. He prescribed Bextra (a non-steroidal anti-inflammatory medication - "NSAID") and Ultram (a narcotic-like pain reliever). He also suggested an SI joint injection. Tr. 196.

Dr. Peter G. Dalldorf, an orthopedic surgeon in practice with Dr. McKinley, examined Plaintiff on November 5, 2004. Plaintiff complained of right long-finger trigger finger symptoms. Dr. Dalldorf noted that Plaintiff's right long finger was catching in the palmar area. He provided a lidocaine injection to the affected area. Tr. 195. On November 19, 2004, Plaintiff continued to

3

complain of trigger finger problems.  Dr. Dalldorf diagnosed right long and ring trigger fingers, left long trigger finger, and carpal tunnel syndrome.  Tr. 194.  He performed a right carpal tunnel release and trigger finger release of Plaintiff's right index, middle, and ring fingers on January 11, 2005.  Tr. 191-192.  Plaintiff reported that she was "doing fine" on January 19, 2005.  Dr. Dalldorf advised Plaintiff that she could resume light activities, with no firm gripping or repetitive activity.  Tr. 189.  He performed left carpal tunnel release surgery and trigger finger release surgery on February 1, 2005.  Tr. 187.  On February 21, 2005, Dr. Dalldorf noted that Plaintiff was "doing fine" and had no numbness, tingling, or finger triggering.  He advised Plaintiff to increase her activities.  Tr. 184.

Plaintiff began treatment with Dr. Jennifer Baugh, a family practitioner, on March 3, 2005.  Plaintiff had recently moved to Boiling Springs, South Carolina from North Carolina and was "back and forth" between the two places.  Dr. Baugh noted that Plaintiff had been "pretty healthy other than chronic back pain."  Plaintiff reported that Bextra was the only thing that helped her back pain.  Plaintiff denied weakness, depression, anxiety, or mental disturbance.  Examination revealed that Plaintiff was 61.5 inches tall and weighed 178.5 pounds.  Respiratory, cardiovascular, and gastrointestinal examinations were normal.  Her gait and station, reflexes, sensation, and mental status were normal.  Dr. Baugh diagnosed back pain, insomnia, hypothyroidism, and glucose intolerance.  She ordered laboratory tests and prescribed medications.  It was noted that Plaintiff's back pain was stable on her current medications.  Tr. 175-178.

On May 3, 2005, Plaintiff reported to Dr. Baugh that she had taken Ativan to deal with stress (two of her sisters had recently passed away within a day of each other), but no longer needed the medication.  Dr. Baugh wrote that Bextra had recently been taken off the market, and Plaintiff was having difficulty with pain.  It was noted that Plaintiff had traveled to Cancun, Mexico.  Examination

4

revealed that Plaintiff had bilateral trochater tenderness, but normal reflexes. Dr. Baugh diagnosed back pain, obesity, and high cholesterol. She discussed with Plaintiff the importance of exercise, especially walking and aerobic exercise. Tr. 166-169.

Plaintiff complained of difficulty sleeping on July 6, 2005. She reported that she was walking a mile or two four to five times a week and had lost about nine pounds through diet and exercise. Plaintiff asked Dr. Baugh how to get disability because her back pain made it difficult for her to sit for long periods of time. She also wanted a "handicapped sticker." Dr. Baugh advised Plaintiff to continue to diet and exercise, and prescribed Relafen and Celebrex for Plaintiff's back pain. Tr. 161-163.

On September 1, 2005, Plaintiff's weight decreased to 160 pounds. She reported that she had really been working on her diet and exercise. She said her new medication had not helped her back problem and she wanted to try something else. Examination revealed that Plaintiff had right lumbar and SI area tenderness. Dr. Baugh prescribed Ultram, Flexeril, and Naproxen Sodium. Tr. 156-160.

At her next visit (December 1, 2005) to Dr. Baugh, Plaintiff had gained approximately eight pounds and reported she was no longer exercising. She complained of pain in her SI area and left arm, and said she could not sit for long periods. Dr. Baugh diagnosed glucose intolerance, chronic back pain, hyperlipidemia, obesity, and anxiety disorder. She adjusted Plaintiff's medications. Tr. 197-199.

On December 7, 2005, Dr. Joan Crennan, a state agency medical physician, reviewed Plaintiff's record. Dr. Crennan opined that Plaintiff had the residual functional capacity ("RFC") to lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk with

normal breaks for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and frequently climb, balance, stoop, kneel, crouch, and crawl.  Tr. 205-211.

An MRI of Plaintiff's lumbar spine was performed on January 17, 2006.  It showed mild to moderate right neural foraminal narrowing and severe spondylosis with mild to moderate bilateral neural foraminal narrowing at L5-S1, but no canal stenosis.  Tr. 212.

Plaintiff was examined by Dr. Robert Flandry, a neurosurgeon, on February 9, 2006.  Plaintiff said that her back tended to be stiff and sore in the morning and if she stayed in one position for too long.  She reported that her medications had not been effective in providing pain relief.  Dr. Flandry noted that the MRI showed age appropriate changes with no evidence of significant canal or foraminal compromise or nerve root involvement.  Examination revealed that Plaintiff had normal station and a non-antalgic gait.  She had lumbosacral tenderness and pain on extremes of motion, but no motor weakness, negative straight leg raise testing, intact sensation, and normal reflexes.  Dr. Flandry assessed lumbar spondylosis and recommended conservative treatment including physical therapy.  Tr. 227-229.

On March 6, 2006, Plaintiff was noted to have gained ten pounds, but she reported she joined a fitness center the previous week and had since lost one and one-half pounds.  Plaintiff was going to physical therapy and said that Naproxen (an NSAID) was working well for her.  She complained of stiffness, but denied muscle cramps, joint pain or swelling, back pain, or muscle weakness.  Dr. Baugh assessed hyperlipidemia, chronic back pain, hypothyroidism, obesity, and glucose intolerance. Tr. 216-218.

Dr. Baugh completed a form on March 7, 2006, in which she wrote that Plaintiff had an anxiety disorder for which she took Buspar, which improved her condition.  Dr. Baugh opined that

Plaintiff was fully oriented, had intact thought process and content, had normal mood and affect, and had good concentration and memory. Dr. Baugh noted that Plaintiff did not have any work-related limitations in function due to a mental condition. Tr. 224.

On March 7, 2006, Plaintiff followed-up with Dr. Flandry's physician's assistant, Chal Mills. Plaintiff reported that she completed a three-week course of physical therapy, but it had not reduced her back pain. Mr. Mills assessed that Plaintiff had "no overt neural compression that would warrant surgery." It was noted that Plaintiff had declined referral to a pain management specialist as she was dubious about undergoing injections. Tr. 225.

On May 21, 2006, Dr. Lisa Varner, a state agency psychologist, reviewed Plaintiff's medical record. She opined that Plaintiff's anxiety disorder was not severe as it resulted in no restriction of activities of daily living; no difficulties maintaining social functioning; no difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Tr. 230-242.

On May 15, 2006, Dr. William Hopkins (a state agency medical consultant) opined that Plaintiff retained the RFC to lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk for normal breaks for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday. He explained that his conclusions were supported by the results of the January 2006 MRI in addition to the lack of objective findings on examination and Plaintiff's rejection of a formal pain management program. Tr. 245-251.

At her July 25, 2006 appointment with Dr. Baugh, Plaintiff reported she and her husband had been "out of town." She acknowledged that she was not doing well with exercising on the treadmill. She complained of back and sleeping problems. Dr. Baugh diagnosed hyperlipidemia, glucose intolerance, obesity, and insomnia. She advised Plaintiff to increase exercise and refilled her

prescriptions. Tr. 254-256. On October 23, 2006, Plaintiff complained that she had started having right knee pain a month previously, and had recently re-injured her knee while in the ocean in Mexico. Examination revealed that Plaintiff had right knee pain with internal rotation, but full range of motion and no swelling or tenderness. X-rays showed some narrowing over the medial aspect of her right knee with some possible early arthritis. Tr. 281-282.

On November 2, 2006, Plaintiff's knee was examined by Dr. Stephan Kana, an orthopedist. Examination revealed some right knee joint tenderness and crepitus, but with no deformity. Dr. Kana noted that x-rays were normal. His impression was medial meniscus tear, he recommended conservative treatment, and he provided a right-knee injection. Tr. 267.

A consultative physical examination was performed by Dr. Ronald Tollison on November 21, 2006l. Plaintiff complained that her back hurt all the time. She said she could only sit for a few minutes and stand about ten minutes. She was not taking any medications for back pain. Dr. Tollison noted that Plaintiff ambulated and got on and off the examination table without difficulty. She had full range of motion in her extremities and normal reflexes. He noted low back tenderness to palpation and that Plaintiff had pain with flexion. Dr. Tollison assessed degenerative disk disease and chronic lower back pain. Tr. 263-264.

Dr. Tollison also completed a questionnaire in which he opined that Plaintiff frequently experienced pain or other symptoms severe enough to interfere with the attention and concentration needed to perform even simple work tasks, but that she was capable of low-stress jobs. He thought that Plaintiff could sit for only twenty minutes at time and for only about four hours in an eight-hour workday; stand only ten minutes at a time and less than two hours in an eight-hour workday; lift and carry less than ten pounds frequently, up to ten pounds occasionally, and up to twenty pounds rarely;

and needed a job that allowed for position shifts at will because she would need to walk around and take unscheduled breaks during the day. Dr. Tollison thought that Plaintiff could only occasionally twist and climb stairs; rarely stoop and climb ladders; and never crouch or squat. Tr. 260-261.

Dr. Baugh noted that she was "doing pretty well" on January 30, 2007. Tr. 276-278. In April 2007, Dr. Kana performed right knee arthroscopic surgery. Within a week, Plaintiff was doing well, without complaints. Dr. Kana referred Plaintiff to physical therapy and stated that Plaintiff could perform activity "as tolerated." Tr. 265.

On May 1, 2007, Dr. Baugh noted no particular abnormalities and advised Plaintiff on her medications. Tr. 269-270. Follow-up laboratory testing was done on July 11, 2007. Tr. 287-288. On October 31, 2007, Dr. Baugh noted that Plaintiff was not exercising, but was doing some volunteer work at a hospice. Examination revealed that Plaintiff was in no acute distress, had no neurological deficits, her psychiatric examination was within normal limits, and Plaintiff had lost weight. Dr. Baugh adjusted Plaintiff's medications. Tr. 283-285.

On January 24, 2008, Dr. Baugh completed a questionnaire from Plaintiff's attorney in which she opined that Plaintiff frequently experienced pain or other symptoms severe enough to interfere with attention and concentration, but was capable of low-stress jobs. Dr. Baugh thought that Plaintiff could walk only two to three blocks at a time; could sit for thirty minutes at a time and for less than two hours in an eight-hour workday; could stand for fifteen minutes at a time and less than two hours in an eight-hour workday; could lift and carry up to ten pounds occasionally; had to get up and walk around for five minutes every fifteen minutes; needed a job that permitted shifting positions at will; would need to take unscheduled breaks during the day; could occasionally climb stairs; could rarely

twist, stoop, crouch, and squat; could never climb ladders; and would be absent more than four days per month.  Tr. 292-295.

On March 10, 2008, Plaintiff stated she wanted an increase in her Ultram prescription.  She said that she was applying for disability because her back pain made it nearly impossible to work as she had to change positions often, and could not sit or stand for long.  Examination revealed that Plaintiff had bilateral tenderness in her lumbar and SI area; some stiffness in her back; positive straight leg raising tests, but no neurological deficits; and normal reflexes, sensation, and strength.  Plaintiff had normal mood and affect and normal attention span and concentration.  Tr. 298.  Dr. Baugh spent 45 minutes with Plaintiff discussing her back problems, filled out forms, counseled her, and adjusted her medications.  Tr. 296-299.

Plaintiff was treated in the hospital from April 15 to 16, 2008 for acute delirium.  Dr. Andas Koser noted that Plaintiff had gone there after attending a funeral.  He thought that Plaintiff's delirium was secondary to either severe anxiety or her taking a combination of Flexeril and Neurontin.  Plaintiff's condition resolved relatively quickly without any intervention, and all diagnostic studies were inconclusive.  Dr. Koser advised Plaintiff to stop taking Neurontin.  Tr. 307

On April 24, 2008, Plaintiff reported that since her hospitalization she had been "her normal self."  She denied any difficulty with concentration or coordination, numbness, poor balance, weakness, or seizures.  Examination revealed that Plaintiff had no neurological deficits, normal reflexes, normal sensation, and normal strength.  Tr. 301-302.

On July 29, 2008, Plaintiff reported that she usually cooked lunch for her son.  She denied any psychological problems.  No neurological deficits were noted.  Tr. 320-322.  On August 6, 2008, Plaintiff had a skin lesion removed.  Follow up as to a food diary that she was asked to keep revealed

10

that she ate out more than eighty percent of the time. Dr. Baugh advised Plaintiff to stop eating out and lower her calorie count. Tr. 317-319.

On November 4, 2008, psychological examination was normal and Dr. Baugh did not observe any physical abnormalities. She refilled Plaintiff's prescriptions for Buspar and Neurontin. Tr. 325-328.

## HEARING TESTIMONY

Plaintiff testified that she quit her job as a customer service representative for American Express in October 2004. She said that she was having difficulty standing up after long periods of sitting for her job. Tr. 35. Prior to that, she had worked as an apartment manager. Tr. 36. She said that she had back pain for fifteen years, took Ultram for pain, and took Neurontin for arthritis and to help her sleep. Tr. 37. Plaintiff reported that she had knee pain at times as well as a history of carpal tunnel syndrome. Tr. 38. She said she had diabetes for which she did not take medication, but tried to control it with diet. Tr. 39. Her medication for anxiety helped her. Tr. 39-40.

Plaintiff said that she could not stand and that walking was easier than standing in one spot. She thought that she could walk for about fifteen minutes. Plaintiff said she could only sit for thirty minutes at a time and could lift a gallon of milk (seven to eight pounds). Tr. 40-41. She reported having a time-share property in Mexico, which she last visited in October 2008. Plaintiff was able to drive and spent time visiting with friends and family. Tr. 42. She went to Mexico by plane. She attended church every Sunday and was in a quilting group that met for an hour a week. Tr. 43. Plaintiff shopped, cooked, and did dishes. Tr. 44. She also was able to do laundry, make her bed, and do most of the housework. Tr. 45. Plaintiff testified that her hands did not usually bother her and she had no trouble with dressing or grooming. She also denied any side effects from her

medications. Tr. 47. Plaintiff stated that she sat in a recliner about three times a day because of her back pain. She felt stiff and had difficulty walking after getting out of bed in the morning. Tr. 47-49.

Dr. Benson Hecker, a vocational expert ("VE"), testified that Plaintiff worked in the vocationally relevant past as a customer service worker (skilled and sedentary as she performed it) and as an apartment manager (semi-skilled and sedentary). Tr. 51. The ALJ asked the VE to consider a claimant of Plaintiff's age, education, and work experience who could perform medium work. The VE stated that such a person could perform Plaintiff's past relevant work as a customer service worker and apartment manager. Tr. 51-52.

## DISCUSSION

Plaintiff asserts that the Commissioner: (1) applied an improper legal standard by failing to provide a specific function-by-function assessment; (2) applied an incorrect legal standard as to her complaints of pain; and (3) improperly discounted the opinion evidence from her treating physician (Dr. Baugh). The Commissioner argues that the decision that Plaintiff was not disabled under the Social Security Act is supported by substantial evidence[1] and free of legal error.

A.    RFC/Substantial Evidence

Plaintiff alleges that the Commissioner applied an improper legal standard by failing to provide a specific function-by-function assessment of her physical capacities. The Commissioner

---

[1]Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

contends that the ALJ properly determined that Plaintiff could perform medium work based on the objective medical evidence, the credibility of Plaintiff's subjective statements, and the opinions of treatment providers and consulting examiners. Additionally, the Commissioner argues that the ALJ's finding that Plaintiff could perform medium work encompasses his function-by-function assessment.

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." SSR 96-8. The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. Id.

The ALJ's decision that Plaintiff had the RFC to perform the full range of medium work is supported by substantial evidence. The ALJ provided a narrative discussion describing how the evidence supported his conclusions and citing specific medical evidence. Tr. 22-24. He also explained how he considered and resolved material inconsistencies or ambiguities in the evidence, including evaluating Plaintiff's testimony regarding her symptoms and the opinions of Dr. Baugh and Tollison. See SSR 96-8p. Based on this, the ALJ concluded that Plaintiff could perform medium work. Although Plaintiff's RFC may not have been as detailed as preferred, it is adequate. The ALJ specifically referred to 20 C.F.R. § 1567(c) (Tr. 21) which refers to the lifting and carrying levels for

13

medium work.[2]  A determination of a claimant's RFC implicitly includes a finding that the claimant is able to work an eight-hour day.  See Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006).

The ALJ's RFC finding is also supported by the findings of the state agency physicians.  See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review.").  Although Dr. Crennan's RFC opinion was made prior to the January 2006 MRI, Dr. Hopkins specifically noted the MRI as supporting his conclusion that Plaintiff could perform medium work.

Additionally, Plaintiff there is no indication that her condition significantly worsened at the time of her alleged onset of disability (October 2004) and she worked until that time despite this impairment (see Dr. McKinley's June 2004 notation that indicates Plaintiff had been working with chronic low bak pain - Tr. 196).  See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)(claimant who worked with impairments over a period of years without any worsening of condition was not entitled to disability benefits); Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1972)(finding claimant was not disabled where she had eye problems of long standing, worked regularly for years despite the problem, and had no significant deterioration).

B.    Credibility

Plaintiff argues that the Commissioner applied an incorrect legal standard by not clarifying whether he found Plaintiff's complaints of pain unconvincing at the threshold where

---

[2]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

objective medical evidence is required, or in the second part, in which a broad array of subjective factors are considered. The Commissioner argues that the ALJ properly described and followed the two-prong process in his decision to discount Plaintiff's credibility.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a claimant's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence. At the first prong, the ALJ found that Plaintiff had medically determinable impairments which provided "some support to [her] allegations." Tr. 23. He then went on to address the second prong by evaluating the intensity and persistence of her pain, and the extent to which her pain would affect her ability to work. The ALJ's decision to discount Plaintiff's credibility is supported by a lack of objective medical findings, her wide range of activities of daily living, the conservative nature of her treatment, and the fact that her pain improved with conservative treatment. Plaintiff's medical

15

providers, rather than restrict her activities, consistently advised her to increase her exercise.  Tr. 168, 256, 277.

The ALJ discussed Plaintiff's treatment records for her back pain, joint problems, and obesity, and observed that there were several references to benign clinical findings.  Tr. 23.  On March 3, 2005, five months after her alleged onset date, Dr. Baugh noted that Plaintiff was "pretty healthy other than chronic back pain."  Tr. 175.  On January 30, 2007, it was noted that Plaintiff was "doing pretty well."  Dr. Baugh consistently wrote that Plaintiff was in no acute distress; had normal gait and station; had no neurological deficits; and had normal sensation, reflexes, and strength.  Tr. 154-179, 197-203, 216-224, 252-258, 268-306, and 317-328.  Dr. Flandry noted that Plaintiff had negative straight leg raise testing, intact sensation, and normal reflexes (Tr. 228), and these findings were unchanged in March 2006 (Tr. 2006).  During Dr. Tollison's November 2006 examination, Plaintiff ambulated and got on and off the examination table without difficulty, she had full range of motion in her extremities, and she had normal reflexes.  Tr. 264.

Plaintiff's back pain was treated conservatively, with weight loss and medication management.  Tr. 168, 178, 199, 216, 277, 287.  In March 2006, when she was exercising everyday at a fitness center, Plaintiff complained only of stiffness and denied having back pain.  Tr. 217.

The ALJ's decision is also supported by Plaintiff's activities of daily living.  See Tr. 22-23. At the hearing, Plaintiff testified that she vacationed in Mexico and flew in a plane to get there.  She did most of the housework, including cooking, doing laundry, making beds, and washing dishes.  She also drove and shopped.  Tr. 44-45.  Plaintiff regularly attended church and was part of a once a week quilting group.  Tr. 43.  Plaintiff regularly went out to eat and cooked lunch every day for her son. Tr. 317, 320.  On her March 2006 Daily Activities questionnaire, Plaintiff stated that she spent three

to four hours per day reading, doing word puzzles, and watching movies. Tr. 140. The record also contains references to Plaintiff joining a gym and exercising there (Tr. 216-217), as well as spending time exercising and walking one to two miles at a time (Tr. 157, 161, 278, 287). Plaintiff also did volunteer work at a local hospice. Tr. 283, 301. Plaintiff's ability to perform these activities conflicts with her testimony that she only had limited ability to sit, stand, walk, and lift. Tr. 39-41.

The ALJ's credibility determination is also supported by inconsistencies between Plaintiff's statements and evidence in the medical record. Plaintiff testified that she could only sit for only thirty minutes at a time (Tr. 40), but she was able to occasionally fly to Mexico and reported in March 2006 that she could drive for one to two hours before stopping for a break. Plaintiff claimed that she could not stand (Tr. 40), but in March 2006, she was working on a cross trainer and going to a fitness center daily (Tr. 216). She also reported on the Daily Activities Questionnaire that she could stand for twenty to thirty minutes at a time. Tr. 141. See Mickles v. Shalala, 29 F.3d at 921 (inconsistencies supported a finding that claimant's testimony was not credible).

C.      Treating Physician

Plaintiff alleges that substantial evidence does not support the Commissioner's findings because the RFC found by the ALJ conflicts with the opinion evidence from Plaintiff's treating physician, Dr. Baugh. She argues that the MRI of her lumbar spine provides compelling support for Dr. Baugh's opinion, and the opinion is corroborated by Dr. Tollison's opinion (especially as to the inability to complete an eight hour shift standing, walking, and sitting in combination). Plaintiff also argues that Dr. Baugh's assessment of function was improperly rejected categorically where no specific alternative functional limitations were set forth in the decision.

17

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount Dr. Baugh's opinion of disability is supported by substantial evidence. In his opinion, the ALJ noted that he did not give this opinion controlling weight because it was conclusory in nature and was an opinion reserved to the Commissioner,[3] was not supported by

---

[3]A conclusory opinion is not controlling since the issue of disability is the ultimate issue in a Social Security case and the issue is reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994);

the objective medical evidence of record, was contradicted by Plaintiff's activities, and was not supported by the record as a whole.

Plaintiff argues that Dr. Baugh's opinion should be given controlling weight because it was supported by Dr. Tollison's opinion and the lumbar MRI revealed severe spinal stenosis. Review of the notes from the specialist (Dr. Flandry) and his assistant who reviewed the MRI, however, reveals that the MRI changes were age-appropriate; there was no nerve root involvement; surgery was not recommended; Plaintiff had negative straight leg raise testing, no motor weakness, intact sensation, and normal reflexes; Dr. Flandry placed no limitations on Plaintiff's ability to perform work; and she was treated conservatively. Tr. 227-229, see Tr. 225. An orthopedist who treated Plaintiff for her back complaints also did not put any limitations on her ability to work. See Tr. 196. The ALJ's decision to not assign controlling weight to Dr. Tollison's opinion is supported by substantial evidence because he only examined Plaintiff on one occasion, was not a treating physician, and much of his opinion was on issues reserved to the Commissioner.

Dr. Baugh's opinion is contradicted by her treatment notes which reveal that Plaintiff was able to walk 1-2 miles (not only 2-3 blocks), use a cross-trainer, and that Dr. Baugh advised Plaintiff on numerous occasions to increase her activities, exercise, and walk (see Tr. 157, 163, 168, 256, 278). Although Dr. Baugh opined that Plaintiff could sit for less than two hours in an eight-hour day, Dr. Baugh's notes indicated that Plaintiff was able to frequently travel.[4] She never noted any limitations

---

see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)(statements that a claimant could not be gainfully employed are not medical opinions, but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner); King v. Heckler, 742 F.2d 968 (6th Cir. 1984); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir.1984).

[4]Dr. Baugh noted Plaintiff's travel to Mexico and also noted that in May 2005 Plaintiff was going on a cruise the next week, and in March 2006 that Plaintiff and her husband were going to Las

on Plaintiff's ability to engage in activity in her extensive notes, although she did note that Plaintiff was able to do volunteer work and eat out a lot. See Montgomery v. Chater, No. 95-2851, 1997 WL 76937, at *1 (4th Cir. Feb. 25, 1997)(ALJ's finding that treating physician's opinion was not persuasive upheld, in part, because his opinion was unsupported by contemporaneous treatment notes).

Dr. Baugh's clinical findings do not support her opinion that Plaintiff was so limited. Instead, her notes on numerous occasions indicate that Plaintiff was in no acute distress; she had normal gait and station; she had no neurological deficits; and she had normal sensation, reflexes, and strength. Tr. 154-179, 197-203, 216-224, 252-258, 268-306, 317-328.

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

---

Vegas in May. Tr. 168, 216.

RECOMMENDED that the Commissioner's decision be **affirmed**.

Joseph R. McCrorey
United States Magistrate Judge

February 23, 2011
Columbia, South Carolina